UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

JOSEPH CAIAZZA, on his own
behalf and those similarly situated

       Plaintiff,

v.                            Case No.: 2:18-cv-784-FtM-38MRM

CARMINE MARCENO,

       Defendant.

_____/

## <u>OPINION AND ORDER</u>[1]

      Before the Court is Defendant Carmine Marceno's Motion for Summary Judgment (Doc. 46) and Plaintiff Joseph Caiazza's response in opposition (Doc. 58). The parties replied, surreplied, and sur-surreplied too. (Docs. 61; 66; 69). The Court grants the Motion in part. Also here is Caiazza's Motion for Summary Judgment (Doc. 67), which seeks judgment on the same two issues. Marceno responded (Doc. 70) and Caiazza replied (Doc. 71). The Court denies that Motion.[2]

---

[1] Disclaimer: Documents hyperlinked to CM/ECF are subject to PACER fees. By using hyperlinks, the Court does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide, nor does it have any agreements with them. The Court is also not responsible for a hyperlink's availability and functionality, and a failed hyperlink does not affect this Order.

[2] On the factual issues, Caiazza takes contradictory positions. *Compare* (Doc. 58 at 20 (arguing "there are genuine issues of material facts")), *with* (Doc. 67 at 1 ("**there are *no* issues of material fact**")). One day before moving for summary judgment based on the lack of a genuine dispute, Caiazza surreplied to Marceno's Motion contending "there are material issues of fact." (Doc. 66 at 1). It is unclear how counsel can—in good faith—sign court papers making such representations. This seems to be an attempt to increase the briefing and drive up fees running afoul Rule 1. Fed. R. Civ. P. 1 (The Rules "secure the just, speedy, and inexpensive determination of every action."). That said, the Court denies the Motion for the reasons described below.

**BACKGROUND**

This is a Fair Labor Standards Act ("FLSA") case.  Marceno is the Lee County Sheriff.  And Caiazza is a retired Sheriff's Deputy.  During the relevant time, Caiazza worked on Captiva and Sanibel Islands (collectively, the "Islands").  The Islands had only one other patrol officer, along with a supervisor who had mostly administrative duties.

Every fourteen days, Marceno scheduled Caiazza for seven twelve-hour shifts of active patrol, with each followed by a twelve-hour on-call period.  For one other day every week, Caiazza was on call again.  When on call, Caiazza had to respond to call outs within one hour.[3]  Given geographical reality, this restricted Caiazza to the Islands and their surrounding waters while on call.  To facilitate his job, Caiazza lived in a condo on Captiva, with rent paid by Marceno.  After a shift, Caiazza turned off his radio to charge it.  So dispatchers notified him of call outs on a work cell phone.  While not required, Caiazza regularly watched his work computer for call outs too because notifications sometimes appeared in that system before the dispatcher could make a call.  Even when not on call, Caiazza

---

[3] Caiazza tries to put this in dispute but falls well short.  He offers vague, unsupported declarations that he "had to be available to immediately respond."  (Doc. 58-1 at 3).  Caiazza also points to language from his job description explaining an officer (including an on-duty officer) "diligently monitors dispatch and responds to all dispatch directed services calls in a timely manner consistent with call classification."  (Doc. 47-1 at 3).  Where it addresses on-call time, the job description simply states officers must respond to "requests in a timely manner consistent with agency policies/procedures."  (Doc. 48-2 at 10).  None of that disputes the only evidence on Marceno's policy that on-call officers had one hour to respond to call outs.  (Docs. 48-1 at 4; 67-2 at 13-15).  And there is no evidence of Marceno ever applying a shorter response time during the relevant three years.  Rather than confront that evidence with evidence a reasonable jury could rely on, Caiazza's counsel makes mere argument grasping for ambiguity straws.  In short, Caiazza does not put the one-hour policy into genuine dispute.

could receive call outs to serve as backup. When on call, Caiazza could not drink alcohol. Because of these conditions, Caiazza says he used on-call time to benefit Marceno, his coworkers, and Island residents.

Caiazza brought a one-count Complaint alleging FLSA overtime violations over three years. (Doc. 17). Caiazza contends the time he spent on call was compensable and he worked many overtime hours without pay.

## LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). And a material fact is in genuine dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. The moving party bears the initial burden to show the lack of genuinely disputed material fact. Shiver v. Chertoff, 549 F.3d 1342, 1343 (11th Cir. 2008). At this stage, courts must view all facts and draw reasonable inferences in the light most favorable to the nonmoving party. Rojas v. Florida, 285 F.3d 1339, 1341-42 (11th Cir. 2002).

## DISCUSSION

To start, the Court addresses the hours at issue before turning to the dispute on pay for hours worked.

**A. On-Call Time**

Caiazza contends all the time he spent on call is compensable. Marceno counters that such time was not spent working under the FLSA, so no pay was necessary. The Court agrees with Marceno and holds the time Caiazza spent on call (but not called out) was not compensable, so Caiazza is not entitled to overtime pay based on those hours.

On-call employees may be entitled to pay for the time they spend waiting. *Armour & Co. v. Wantock*, 323 U.S. 126, 134 (1944). Traditionally, the distinction has been whether an employee "was engaged to wait" or "waited to be engaged," with only the former compensable. *Skidmore v. Swift & Co.*, 323 U.S. 134, 136 (1944). Deciding whether an employee is working during on-call time "depends on the degree to which the employee may use the time for personal activities." *Birdwell v. City of Gadsden, Ala.*, 970 F.2d 802, 807 (11th Cir. 1992). In other words, "whether 'the time is spent predominantly for the employer's benefit or for the employee's.'" *Id.* (quoting *Armour*, 323 U.S. at 133). To determine if time is compensable, courts scrutinize "the agreements between the particular parties, appraisal of their practical construction of the working agreement by conduct, consideration of the nature of the service, and its relation to the waiting time, and all of the surrounding circumstances." *Skidmore*, 323 U.S. at 137.

If "a particular set of facts and circumstances is compensable under the FLSA is a question of law for the Court to decide." *Llorca v. Sheriff, Collier Cnty., Fla.*, 893 F.3d 1319, 1324 (11th Cir. 2018). So "it is for the court to determine if a

set of facts gives rise to liability; it is for the jury to determine if those facts exist."

*Dade Cnty., Fla. v. Alvarez,* 124 F.3d 1380, 1383 (11th Cir. 1997) (alteration accepted and citation omitted).

While not controlling, regulations interpreting the FLSA address "on-call time":

> An employee who is required to remain on call on the employer's premises or so close thereto that he cannot use the time effectively for his own purposes is working while "on call." An employee who is not required to remain on the employer's premises but is merely required to leave word at his home or with company officials where he may be reached is not working while on call.

29 C.F.R. § 785.17. The regulations explain on-call time spent at home. Such time "may or may not be compensable depending on whether the restrictions placed on the employee preclude using the time for personal pursuits." 29 C.F.R. § 553.221(d). "Where, for example, [a firefighter] has returned home after the shift, with the understanding that he or she is expected to return to work in the event of an emergency in the night, such time spent at home is normally not compensable." *Id.* "On the other hand, where the conditions placed on the employee's activities are so restrictive that the employee cannot use the time effectively for personal pursuits, such time spent on call is compensable." *Id.* At bottom, for on-call time to be work time, an employee's use of the "time must be severely restricted." *Birdwell,* 970 F.2d at 810.

Here, the restrictions were not severe enough to transform Caiazza's on-call time into work time and the period was not predominantly for Marceno's benefit.

Mainly, Caiazza contends he was on call for twenty-four hours at a time and had to monitor his computer constantly, which prevented him from pursuing personal activities. Yet Marceno did not impose significant restrictions on Caiazza, who could use on-call time for his own benefit. According to Christopher Lusk (the Islands' other patrol officer), he spent on-call time reading, watching tv or movies, cooking, entertaining guests, visiting friends, eating out, shopping, playing with his kids, fishing (on or near the Islands), exercising, and sleeping. (Doc. 49-1 at 4). In other words, Lusk used on-call time primarily for his benefit rather than Marceno's. While Caiazza blankly states he could not do similar activities, he never explains why. Marceno imposed no restriction on those activities. And besides the limitations described below, Caiazza never points to evidence showing any restriction on his personal pursuits.

Rather, Caiazza seems to claim he could not engage in any activities because he might be interrupted while doing so. For instance, Caiazza contends he was restricted from simply watching a tv show because if a call came in, he would have to leave during the show. (Doc. 47 at 32 ("Say if you want to watch a TV show, you start watching it, you have to leave. So that's one of the restrictions.")). Likewise, he claims grilling was out of the question because there was a chance he might have to turn the grill off. (Doc. 47 at 32 ("If I wanted to try to cook out, there's times I wanted to grill out on the back porch, I had to go, shut the grill off, come back later, the food is done.")). Neither of these is an instance in which Marceno's demands were so restrictive that Caiazza could not engage in those activities. Instead—like

all on-call employees—there was just a chance Caiazza's pursuit might be interrupted. But if the mere chance of interruption alone is enough to convert on-call time to FLSA compensable time, then all on-call time is compensable. This would ignore the case law and regulations, which clarify "an employee's free time must be severely restricted for off-time to be construed as work time." *Bridwell,* *970 F.2d at 810.* Other courts rejected similar arguments, reasoning a plaintiff's voluntary abstention from activities for fear of interruption is not enough unless the employer restricted the activity expressly or implicitly through other limitations (like response times). *Taunton v. GenPak LLC,* 762 F. Supp. 2d 1338, 1351 (M.D. Ala. 2010). At bottom, the possibility a work call will disrupt an employee's pursuits is an inconvenience every on-call employee must deal with. *See Gaylord v. Miami-Dade Cnty.,* 78 F. Supp. 2d 1320, 1325 (S.D. Fla. 1999) ("As a matter of law, an employee is not 'working' simply because that employee must be on call if needed.").

To be sure, there were restrictions on some of Caiazza's personal pursuits while on call. Given geographic and temporal limitations, he could not spend time on the mainland, which eliminated some activities like going to a movie theatre or certain stores. And Caiazza could not drink alcohol. Yet such restrictions were not so harsh that Caiazza could not use the time for his own benefit. As Lusk clarifies, there were plenty of personal activities Caiazza could have pursued either at home or on the Islands. Testimony Caiazza offers bears this out. His friend testified Caiazza often went to her house for coffee, dinner, or just to visit while on call.

(Doc. 67-4 at 7-9).  She noted Caiazza often received call outs on his work phone during the visits.  But it is clear Caiazza could leave home and visit friends while on call.  Courts must be careful to distinguish between work schedules that are unenviable, even "perhaps oppressive," and those preventing an employee from using on-call time for their benefit. *Birdwell*, 970 F.2d at 809-10.  Only the latter is actionable under the FLSA.  That Caiazza had to respond to calls sober within an hour did not severely restrict his time so it could not be used for his benefit.

Much of Caiazza's position relies on his practice of constantly checking the computer.  Yet this was not a restriction Marceno imposed.  Nothing in the record—not even Caiazza's testimony—suggests anyone ever asked him to monitor his computer on call.  Lusk provided it wasn't a requirement. (Doc. 49-1 at 4-5 ("I was not required to monitor my agency-issued computer, and no supervisor has ever directed or instructed me to monitor my agency-issued computer while 'On Call.'").  And Caiazza explained he checked the computer voluntarily to respond quickly if another officer needed backup. (Doc. 47 at 16).  But Caiazza's dedication, while commendable, does not convert otherwise noncompensable time into work time.  Likewise, Caiazza's testimony he vigilantly slept clothed in a chair rather than a bed does not advance his cause.  Marceno never asked him to do so.  More important, Caiazza provides no evidence this was necessary to respond to call outs within an hour.  Put another way, nothing supports the conclusion Caiazza's sleeping pattern was time spent predominantly for Marceno's benefit.  Rather, this

appears to be another admirable choice by Caiazza as opposed to a restriction or condition placed upon his free time by Marceno.

Still, Caiazza looks at two out-of-Circuit cases for support. But those simply reveal that the types of on-call assignments demanding pay under the FLSA are far more restrictive than Caiazza's.

In one, a court found on-call time compensable for firefighters restricted to a geographical area. *Cross v. Ark. Forestry Comm'n*, 938 F.2d 912 (8th Cir. 1991). Yet those firefighters needed to respond to calls in only thirty minutes. What is more, the employer required them to continuously monitor radio transmissions—all day everyday—even somehow while sleeping. This severely limited those firefighters' abilities to do anything else besides listen to the radio. Again, Caiazza did not have to monitor his computer, and (regardless of monitoring the computer) he received call outs on a cell phone. So Caiazza could leave his house to do other things in the area if he carried his cell phone. *Cross* specifically distinguished that scenario. *Id.* at 917.

The other case is more dissimilar. *Renfro v. City of Emporia, Kan.*, 948 F.2d 1529 (10th Cir. 1991). There, firefighters had to report to work within twenty minutes of a call. Those call outs occurred three to five times per day and sometimes up to thirteen times. Given the frequency of calls outs and quick response, the firefighters could not use on-call time as they pleased. The undisputed evidence here, however, shows far fewer call outs and longer response times. In his declaration, Caiazza says call outs were "frequent" and "near-

9

constant." (Doc. 58-1 at 3-4).  Without explanation, these descriptions contradict his earlier deposition testimony, which described call outs as inconsistent from week to week.  (Doc. 47 at 32 ("It could be – there's weeks where you would go maybe one or two calls or nothing, there's other weeks you're working 20 straight hours.")).  Most important, time records specify Caiazza was called out around five times every two weeks.  (Docs. 48-2 at 29-111; 62-1 at 3-6; 62-2 at 135-47; 62-3).[4] This is a far cry from the daily call outs *Renfro* found to preclude an employee's use of time.  Likewise, the frequency distinguishes the only in-Circuit case Caiazza relies on.  *Smith v. Ideal Towing, LLC*, No. 1:16-CV-1359-TWT, 2017 WL 5467154, at *4 (N.D. Ga. Nov. 13, 2017).  There, tow truck drivers could except twelve to fifteen calls a day, preventing them from effectively using on-call time for their benefit.  Again, the calls here occurred much less often.

Rather than rely on those distinguishable cases, controlling precedent resolves the question.  In *Birdwell*, the Eleventh Circuit held on-call detectives were not working despite restrictions on their activities such as a requirement to respond "immediately."  *Birdwell*, 970 F.2d at 807.  As here, those detectives could not leave town or drink.  Further, they could neither hunt and fish nor go on family outings without taking two cars.  And if the detectives left home, they needed to

---

[4] As Marceno notes, this figure includes call outs voluntarily initiated by Caiazza.  Without deciding the issue, the Court treats these like any regular call out from dispatch as it is most favorable to Caiazza.  Caiazza pincites no evidence to dispute the frequency of call outs.  At one point, he says Marceno's records are incorrect and asks the Court to compare hundreds of pages of call data to find a needle-in-the-haystack inaccuracy.  But at summary judgment, that's his job, not the Court's.  Fed. R. Civ. P. 56(c)(1)(A), (3).

provide a forwarding number or buy a beeper. Otherwise, "They could do anything they normally did so long as they were able to respond to a call promptly and sober." *Id.* at 810. Caiazza was in a similar position.

In deciding that case, *Birdwell* relied on several other circuit courts that determined far harsher conditions were not work time. *See Norton v. Worthen Van Serv., Inc.,* 839 F.2d 653 (10th Cir. 1988) (employee required to remain near workplace for eight to ten hours a day and respond in twenty minutes was not working because he could pursue personal interests); *Bright v. Hous. Nw. Med. Ctr. Survivor, Inc.,* 934 F.2d 671 (5th Cir. 1991) (employee was on call for all off-duty time and had to respond to calls within twenty minutes); *Halferty v. Pulse Drug Co.,* 864 F.2d 1185 (5th Cir. 1989) (idle time spent at home to answer calls not for employer's benefit because employee could visit friends, entertain guests, sleep, watch tv, do laundry, and babysit). Many districts courts following *Birdwell* reached similar conclusions. This Court noted another nearby sheriff's one-hour response requirement did not convert on-call time into FLSA compensable time. *Calderone v. Scott,* No. 2:14-519-FtM-PAM-CM, 2017 WL 5444190, at *3-4 (M.D. Fla. Feb. 27, 2017), *aff'd on other grounds, Llorca,* 893 F.3d 1319. Similarly, on-call bomb squad technicians who had to remain at home, respond promptly, and not drink were found not severely restricted. *Lurvey v. Metro. Dade Cnty.,* 870 F. Supp. 1570 (S.D. Fla. 1994). Likewise, one court held an employee that seldom left his house while on call was not working as he could watch tv, eat, and sleep. *W. v.*

*S. AG Carriers, Inc.*, No. 1:16-CV-00134 (WLS), 2018 WL 2753029 (M.D. Ga. Apr. 27, 2018).

Even viewing all facts and drawing reasonable inferences for Caiazza, his time spent on call (but not called out) was not so severely restricted that it was for Marceno's benefit. The time is therefore not compensable under the FLSA and summary judgment is granted to Marceno in part.

## B. Overtime Hours

Having concluded what hours are relevant, the Court turns to the dispute over the number of hours Caiazza worked. Part of Caiazza's claim stems from the argument that all his on-call time was compensable, which (as described) is incorrect. But the unpaid overtime claim is not limited to that. Caiazza also says he did not receive overtime pay for call outs and other time worked outside the shifts listed on his timesheets. Marceno contends Caiazza received pay for all the hours he worked. While Marceno argues officers must flex time to adjust their work schedules and account for overtime, Caiazza asserts supervisors prevented him from doing so. On overtime, the Court concludes summary judgment is misplaced.

Employees that work overtime without pay can sue for damages under the FLSA. 29 U.S.C. § 216(b). "An unpaid-overtime claim has two elements: (1) an employee worked unpaid overtime, and (2) the employer knew or should have known of the overtime work." *Bailey v. TitleMax of Ga., Inc.*, 776 F.3d 797, 801 (11th Cir. 2015). On both prongs, there is a genuine issue of material fact.

First, the parties dispute whether Caiazza worked over forty-two hours per week without pay.  Marceno contends he paid Caiazza for all hours reflected on the timesheets, which Caiazza had to submit accurately.  Marceno also points to instances when Caiazza received overtime pay.  (Doc. 62-2 at 128-134).  Caiazza counters his timesheets were false and did not include many hours he spent working.  Because Marceno did not allow overtime on timesheets, says Caiazza, he kept his own records with the actual number of hours he worked during the relevant period.  (Doc. 58-3).  Marceno challenges these records as hearsay, but Caiazza is prepared to testify about unpaid overtime and the records seem to fall within the recorded recollection exception.  *See* Fed. R. Evid. 803(5); (Docs. 47 at 26; 47-2 at 14-15).  Thus, the records could be reduced to admissible form at trial by reading them into evidence.  What is more, Caiazza provided specific examples of uncompensated work he claims.  On one scheduled day off, a DUI call came in right after Caiazza finished a shift.  For that call, Caiazza worked twelve more hours, for which he was not paid or given corresponding time off.  (Doc. 47 at 32-33).  Relatedly, Marceno argues Caiazza did not establish the exact dates and amounts of overtime without pay.  Yet such detailed information is unnecessary to survive summary judgment.  *Allen v. Bd. of Pub. Educ. for Bibb Cnty.*, 495 F.3d 1306, 1317-18 (11th Cir. 2007) ("Thus, it is clear that [defendant] was not entitled to summary judgment based on Plaintiffs' lack of documentation and inability to state with precision the number of uncompensated hours they worked and the days

on which that work was performed.").  At bottom, the parties genuinely dispute whether Caiazza worked unpaid overtime hours.

Second, the parties dispute whether Marceno knew or should have known about Caiazza's overtime hours.  "Knowledge may be imputed to the employer" if supervisors "encourage artificially low reporting" of hours. *Bailey*, 776 F.3d at 801 (alteration accepted and citation omitted).  Imputed knowledge can also occur "when an employer's actions squelch truthful reports of overtime worked." *Allen,* 495 F.3d at 1319.

According to Caiazza, Marceno had a de facto policy preventing officers from reporting over forty-two hours each week. (Doc. 47 at 15-16).  While the written policy stated officers must flex their time to avoid working overtime (unless approved), Caiazza claimed it was impossible to do so for most of the relevant period because of short staffing on the Islands.  (Doc. 47 at 18-19).  And Caiazza testified about protesting the underreported hours to his supervisor, who told him the only way to get paid was by signing timesheets that did not reflect overtime hours. (Doc. 47 at 16).

Marceno sees things different.  He provides evidence that Lusk was encouraged to keep accurate time records.  (Doc. 49-1).  Lusk also used flex time and received overtime pay if he could not flex off.  Likewise, Caiazza's supervisor testified it was up to Caiazza to manage his hours and flex time as needed then submit correct timesheets. (Docs. 67-2 at 35-40; 48-1).  He says Marceno had no

de facto policy against overtime. (Doc. 62-1 at 3). And Caiazza used flex time and received overtime on at least several pay periods.

In other words, there is a genuine dispute of material fact on whether Marceno (or his employees) knew or should have known about the overtime. This defeats Marceno's argument of reliance on Caiazza certifying his hours were correct. When, as here, an employee offers evidence of supervisors encouraging low reporting, the Eleventh Circuit consistently rejects an employer's defense that the employee had to report accurate hours. *Bailey*, 776 F.3d at 803-04 ("[H]ere the supervisor encouraged and participated in the underreporting, so [defendant] knew or had reason to know that the employee was underreporting"); *Allen*, 495 F.3d at 1318-20; *Brennan v. Gen. Motors Acceptance Corp.*, 482 F.2d 825, 828 (5th Cir. 1973). The nonbinding case Marceno relies on does not fit. There, an employer's access to information about plaintiff's work activities could not impute knowledge of overtime hours onto the employer when it relied on the employee's signed timesheets showing no overtime. *Newton v. City Henderson*, 47 F.3d 746 (5th Cir. 1995). Here, Caiazza repeatedly testified to informing his supervisors about unpaid overtime—a situation *Newton* distinguished. *See id.* at 750 (Plaintiff's "payroll forms would not be reliable indicators of the number of hours worked, if there was evidence to support the conclusion that [defendant] encouraged or forced [plaintiff] to submit incorrect time sheets.").

Because there is a genuine dispute on both elements of Caiazza's overtime claim, summary judgment is improper. *Bailey*, 776 F.3d at 801.

Accordingly, it is now

**ORDERED:**

(1)  Defendant's Case Dispositive Motion for Summary Judgment (Doc. 46)

is **GRANTED and DENIED in part**.

(2)  Plaintiff's Motion for Summary Judgment (Doc. 67) is **DENIED**.

**DONE** and **ORDERED** in Fort Myers, Florida on October 3, 2020.

SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

Copies:  All Parties of Record